FILED
DEC 26 2012
U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>JEFFREY ALBERT KOLB and<br>HEIDI ELAINE KOLB,<br><br>    Debtors. | Chapter 7<br><br>Case No. 4:10-bk-21238-EWH |
| JEFF ASHBURN and LINDA ASHBURN; SANDRA McBRIDE; JOY PHOENIX; BONNIE ALLEN; DOTTI OHLMAN; KIMBER INNECKEN,<br><br>    Plaintiffs,<br><br>v.<br><br>JEFFREY ALBERT KOLB and HEIDI ELAINE KOLB,<br><br>    Defendants. | Adv. Case No. 4:10-ap-02034-EWH<br><br>**MEMORANDUM DECISION DENYING DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)** |

## I.   INTRODUCTION

    This is a tale of two cases. According to the seven Plaintiffs, who lent money to or invested in a health club ("the Club") owned by two LLCs controlled by Debtors, the Club was a successful business which Debtors plundered for their personal benefit.

1

Case 4:10-ap-02034-EWH    Doc 69    Filed 12/26/12    Entered 12/26/12 11:13:19    Desc
Main Document    Page 1 of 13

According to Debtors, who claim to have invested almost twice as much in the Club as Plaintiffs, they never used the Club's income for personal expenses without paying the Club back. While Debtors had great hopes and plans for the Club's success, for most of its life, it operated on the edge of financial disaster. Debtors assert that Plaintiffs, all of whom worked or exercised at the Club, were well aware of the Club's fragile financial condition. According to Debtors, they never misrepresented the state of the Club when seeking investments or loans.

Determining whose version of the facts is correct is critical to the determination of Plaintiffs' individual claims. If Plaintiffs' version is correct, they justifiably relied on Debtors' misrepresentations regarding the Club's financial condition when they advanced funds. If Debtors' version is correct, Plaintiffs' reliance is unjustified because Plaintiffs understood the Club was in financial peril from the day it opened its doors. The parties' different versions of the facts also impact any determination regarding whether Debtors intended to defraud Plaintiffs at the time they asked Plaintiffs to invest or loan money. If Plaintiffs are correct, Debtors knew, at the time they were soliciting money from Plaintiffs, either that the money would be used for Debtors' personal benefit or Debtors were misrepresenting the Club's financial status. If Debtors are correct, they never used Club funds, including amounts paid by Plaintiffs, for their personal benefit and never misrepresented the Club's financial condition. The different versions of the facts are also critical in determining if Debtors subjectively intended to harm Plaintiffs when funds were being solicited.[1]

---

[1] Each of these determinations is critical to Plaintiffs' claims under § 523(a)(2) and (a)(6). Plaintiffs also have alleged violations of § 523(a)(4), but have failed to explain how Debtors' conduct constituted either larceny or embezzlement. Nor has there been any demonstration that Debtors owed Plaintiffs a fiduciary duty. As a result, it is unlikely that any of Plaintiffs could prevail under § 523(a)(4).

2

Because Debtors intermingled their personal funds with the Club's funds, a review and analysis of both Debtors' and the Club's financial records is necessary to determine whether Plaintiffs' or the Debtors' version of the facts is more likely. However, because Debtors maintained inadequate financial records, it is impossible to determine who is right. In addition, Debtors destroyed certain financial records postpetition. Even if the destroyed records would not have shed much light on Debtors' financial condition, their destruction was improper. Accordingly, as explained in more detail in the balance of this decision, Debtors' discharge will be denied under § 727(a)(3).

## II.     **FACTS AND PROCEDURAL HISTORY**

A. Club

Debtors, through two different LLC's, operated the Club between 2005 and 2010. The Club moved locations in 2009 after being locked out by its landlord ("Landlord"). Landlord also held a lien on all of the Club's personal property, including computers. Between 2005 and 2008, Heidi Amparan ("Amparan"), along with Heidi Kolb, were the principal operators of the Club.[2] Amparan left the Club in 2008. After the Club changed locations in 2009, it continued to struggle financially and ultimately closed its doors in the first quarter of 2010.

Both Debtors and Amparan contributed money to fund the startup of the Club. Nevertheless, for most of its existence, the Club did not generate sufficient income to cover expenses.[3] Beginning in 2007, Debtors (and, until she left, Amparan) began to

---

[2] The evidence of the exact ownership interests in the two LLCs, their compliance with their organizational documents, and applicable state law is less than clear, but does not affect the outcome of this decision.

[3] The exact amounts contributed by the Debtors are disputed. Debtors assert they contributed $20,000 to help fund the Club's startup. Between 2005 and 2010, Debtors allege that they, or family members,

3

seek financial assistance in the form of investments or loans from Club members and instructors to keep the Club operating.

The financial practices and recordkeeping for the Club were less than perfect. Debtors admit that they intermingled business income from the Club with their personal income in a number of different bank accounts. Debtors also admit that they paid both personal and business expenses from those intermingled accounts, but assert that all payments for personal expenses were reimbursed to the Club.

In January 2006, a QuickBooks system ("QuickBooks") was set up for the Club. Prior to that time, all of the Club's financial records were kept on Excel spreadsheets. The QuickBooks program was installed on multiple computers—one of which, an H.P. laptop, was the Club computer ("Club Computer"). QuickBooks was also apparently installed on a Dell computer maintained at Debtors' residence. (March 5, 2012 Trial Transcript, p. 43, lns 17-21.)

Ultimately, both Debtors and Amparan filed Chapter 7 cases: Amparan filed her case in 2009 and received a discharge. Debtors filed their Chapter 7 petition on July 7, 2010.

On November 12, 2010, a number of the Club members ("Plaintiffs")—who had invested in the club, lent it money, or were allegedly due wages—filed a non-dischargeability complaint against Debtors alleging that Debtors' obligations to them were non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).[4] In addition, Plaintiffs sought to deny Debtors their discharge under §§ 727(a)(2) and

---

contributed $350,000 to $420,000 to try to keep the Club afloat. Plaintiffs assert that Debtors cannot document the alleged additional contributions.

[4] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

4

727(4)(B) and (C). On August 8, 2011, an amended complaint ("Amended Complaint") was filed, which added § 727(a)(3) to Plaintiffs' claims.

Contentious litigation ensued, with discovery battles over Debtors' turnover of financial records—in particular, a complete copy of the QuickBook records ("QuickBook Records"). During a 2004 exam, Debtors agreed to print the complete QuickBook Records and provide them to their attorney for turnover to Plaintiffs' counsel. (Trial Ex. KB, p. 118, lns 10-16.) Debtors failed to do so and, as a result, Plaintiffs filed a motion to compel Debtors to provide documents and a request for limited sanctions ("Discovery Motion").

On June 14, 2011, a hearing was held on the Discovery Motion, which included requests for the QuickBook Records and a listing of monthly accounts receivable and accounts payable from March 2005 to October 2008. At the hearing, Debtors were required to turn over some of the documents requested and to file with the Court and serve on Plaintiffs' counsel a statement about their ability to provide other requested documents, including the QuickBook Records. The Discovery Motion also indicated that Debtors had agreed to turn over the Club Computer, a Dell desktop computer,[5] and a printer to Landlord's attorney.

On June 24, 2011, Debtors filed a notice regarding their ability to produce the requested documents, including the QuickBook Records ("June 24 Notice"). In that notice, Debtors asserted that all of the financial records for the two LLCs had already been turned over, including all of the QuickBook Records. Debtors further stated that the Club had no accounts payable records due to a "lack of time and knowledge."

---

[5] The Dell desktop was replaced by the Club Computer.

5

Case 4:10-ap-02034-EWH    Doc 69    Filed 12/26/12    Entered 12/26/12 11:13:19    Desc
Main Document    Page 5 of 13

According to Debtors, the Club's accounts payable could only be tracked through bank statements previously turned over. Lastly, Debtors asserted that the Club Computer had been turned over and that both the printer and the requested Dell desktop computer no longer existed.

Plaintiffs later served subpoenas on various banks in order to obtain all of the Club's and Debtors' bank statements. Plaintiffs also continued to seek copies of, or direct access to, the QuickBook Records.[6] All parties agree that Debtors turned over a printout from QuickBooks. That printout, however, did not include any information about the Club's payables. Debtor Heidi Kolb testified at a continued 2004 exam that the Club maintained a file of receipts, which would have documented at least some of the Club's payables. According to Heidi Kolb, those files were maintained in a black file box located at the Club's first location, but access to the records was lost when Landlord locked out the Club out. (Ex. LB, p. 146, lns 19-20.)[7] Heidi Kolb testified that Amparan maintained records of the accounts payable between 2005 and 2008 on an Excel spreadsheet on Amparan's individual laptop computer. However those accounts payable records were never re-created after Amparan left in 2008 and took her personal computer with her. Therefore, there were no accounts payable records for the Club for the 2005-2008 time period. (Ex. LB, p. 172, lns 16-23.)[8]

As noted earlier, Landlord held a security interest in all of the Club's personal property, including the Club Computer. After the Debtors filed for bankruptcy, Landlord demanded that the Club Computer be turned over. Before turning the Club Computer

---

[6] As far as the Court can determine from its review of the record, Plaintiffs never requested that the Club Computer, itself, be provided to them.

[7] Apparently, neither Debtors nor Plaintiffs ever requested that Landlord release any Club records.

[8] Neither Debtors nor Plaintiffs appear to have done anything to obtain any Club records from Amparan.

6

over to their lawyer for delivery to the Landlord's lawyer, Debtors had the computer "scrubbed." As a result, the QuickBook program and QuickBook Records were completely removed from the Club Computer. Heidi Kolb testified that the Club Computer was scrubbed because her lawyer advised Debtors that third-party personal information, including credit card numbers of Club members, needed to be protected from disclosure. The "scrub" was performed by a personal acquaintance of Debtors whose last name and whereabouts were unknown to Debtors at the time of the discharge trial. (Ex. LB, pp. 174-175.)

After the Club Computer was delivered to Debtors' counsel, one of the Plaintiffs appeared at Debtors' counsel's office and picked it up. It is unclear why or how that happened, but there is no evidence that either Debtors or Landlord agreed that Plaintiffs could take the Club Computer. Eventually, the Club Computer was delivered to Landlord.

On March 5, May 2, and May 14, 2012, a trial was conducted on the Amended Complaint. Closing briefs have been filed. The matter is past due for decision.

### III.  ISSUES

1. Did the Debtors fail to maintain adequate financial records and/or destroy financial records without just cause?

2. Are the individual claims of the seven Plaintiffs non-dischargeable?

### IV.  JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(G).

## V. DISCUSSION

A. Legal Standard

Section 727 provides that a debtor shall be granted a discharge unless one of eight conditions is met. Section 727(a)(3) is one of those eight conditions. It provides that a debtor who has "concealed, mutilated, falsified or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." § 727(a)(3).

The purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs. Landsdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994). The § 727(a)(3) exception to discharge should be strictly construed in order to serve the Code's purpose of giving debtors a fresh start. Caneva v. Sun Communities Operating L.L.P. (In re Caneva), 550 F.3d 755, 761 (9th Cir. 2008) (citations omitted).

A creditor seeking to deny a debtor a discharge must show: (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and business transactions. Cox, 41 F.3d at 1296-97.

Once a creditor satisfies those two conditions, the burden shifts to the debtor to demonstrate that the failure to keep adequate records is justified under the circumstances of his case. A debtor's honest effort to produce all the records in his possession does not, by itself, satisfy § 727(a)(3). Caneva, 550 F.3d at 763. Rather, the debtor must either produce records as are customarily kept by a person doing the same

8

kind of business, or produce adequate reasons why the debtor was not required to keep such records. Id., citing Meridian Bank v. Alten, 958 F.2d 1226, 1232 (3d Cir. 1992). This legal framework must now be applied to the facts of this case.

B. Lack of Adequate Records

The evidence demonstrates that the creditors have met their *prima facie* burden. Debtors indisputably did not keep records of the Club's payables. As a result, it is impossible for creditors to ascertain the Club's business transactions or Debtors' true financial condition. The question, therefore, is whether Debtors' failure to keep adequate records was justified in the circumstances of their case.

Plaintiffs allege that Debtors were sophisticated in business and, therefore, there was no justification for their failure to maintain adequate records. However, the evidence did not demonstrate that Debtors were experienced at owning and operating a health club. Jeffrey Kolb worked at other jobs and was not involved in the day-to-day operation of the Club. Heidi Kolb had experience as a successful Mary Kay salesperson and had also worked as a manager for other health clubs, but apparently had never had complete responsibility for operating a business, including creating business plans and keeping a complete set of financial records. Yet, even if Debtors were not sophisticated business operators, they were not completely at sea with respect to understanding financial transactions. They maintained multiple bank accounts and wrote at least one operating agreement for one of the LLCs. Debtors introduced no evidence that failure to maintain records of business payables is common in the operation of health clubs. Furthermore, Debtors suffered no medical problems which would have made adequate recordkeeping difficult. They did not confront any language or cultural problems,

9

Case 4:10-ap-02034-EWH    Doc 69    Filed 12/26/12    Entered 12/26/12 11:13:19    Desc
Main Document    Page 9 of 13

problems which would have justified the inadequate recordkeeping. Accordingly, Debtors have failed to demonstrate that the records produced are customarily kept by a person doing the same kind of business or that they had adequate reasons for not maintaining adequate records. Meridian Bank, 928 F.2d at 1232.

Some courts have found that a discharge cannot be denied under § 727(a)(3) when the inadequate records are corporate records and the corporation is a separate entity. See In re Nipper, 186 B.R. 284, 289 (M.D. Fla. 1995). However, that rule cannot help Debtors because they intermingled their corporate and personal financial affairs, making it impossible to separate Debtors' financial records from the Club's.

Further, Debtors' failure to keep adequate records created problems for all parties. For example, Debtors testified that they and family members invested between $300,000 and $400,000 in the Club, but the only evidence of those investments were deposits listed on their bank statements. Without documents identifying the source of the deposits, Debtors had to fall back on the assertion that deposits above a certain amount represented their personal investment in the Club. The lack of any other evidence to corroborate that testimony made it impossible for Debtors to prove the amount of their contributions to the Club.[9]

Similarly, because Debtors intermingled Club and personal money, it was important that records be kept to document what each withdrawal was used for. This was especially true in this case, where Debtors have asserted that any amounts paid for personal expenses were either paid from personal funds deposited into the bank

---

[9] While Debtors emphasize their own financial contribution to the Club, the amount of such contributions is irrelevant to a § 727(a)(3) analysis. A debtor may invest millions in a business, but if he fails to maintain adequate records, his discharge may still be denied under § 727(a)(3).

10

accounts or, if paid from Club money, reimbursed. However, there simply are no records available to corroborate these assertions.

C. Destruction of Records

Failure to keep adequate records is, by itself, grounds for denial of Debtors' discharge. But Debtors did not only maintain inadequate records, they also destroyed records postpetition.

Debtors promised Plaintiffs they would turn over all of the QuickBook Records. Debtors assert that they complied. Both sides agree that the records exchanged contain only accounts receivable information. Plaintiffs argue that the QuickBook Records also should have included accounts payable information. Debtors argue that was not the case, and that there are no payable records for the Club in the QuickBook Records. It is impossible, though, to determine if Plaintiffs are correct because Debtors scrubbed the QuickBook Records from the Club Computer.[10] Debtors' explanation that they scrubbed the Club Computer days before delivering it to their attorney makes no sense. By then, they had already delivered a printout of all the alleged QuickBook Records to Plaintiffs. Presumably any sensitive client information would have been included in that information. Even if that were not the case, there were undoubtedly less drastic measures Debtors could have used to protect sensitive information, such as creating a backup file for the QuickBook Records. There is no evidence they pursued such alternatives.[11]

---

[10] Plaintiffs should not have seized the Club Computer from the office of Debtors' counsel, but Plaintiffs' bad conduct did not damage Debtors, who had already damaged themselves by destroying the QuickBook Records.

[11] The record is less than clear, but the QuickBook Records may remain on Debtors' home computer. If that is the case, there is no plausible reason why the QuickBook Records from that computer were not

11

Debtors' scrubbing of the Club computer destroyed books and records which could have shed light on their financial situation and constitutes a second basis for denying Debtors' discharge under § 727(a)(3). See In re Allison, 2004 WL 3622637 (Bankr. N.D. Tex. Sept. 20, 2004).

D. Plaintiffs' Individual Claims

Because Debtors' discharge is being completely denied under § 727(a)(3), none of the other allegations in Plaintiffs' Complaint need to be addressed. In particular, no determinations will be made as to the amount or dischargeability of each Plaintiff's claim. As a result of the denial of Debtors' discharge, Plaintiffs are free to pursue their claims, pursuant to applicable law, in a court of competent jurisdiction. To the extent there are assets in the estate, Plaintiffs may also seek a pro rata distribution on their claims, when allowed, from the Chapter 7 trustee.

## VI. CONCLUSION

Debtors, without just cause, failed to maintain adequate records to permit creditors to ascertain Debtors' financial condition and the financial condition of a business they controlled. In addition, after their case was filed, Debtors destroyed some of their financial records. Accordingly, Debtors' discharge is denied under § 727(a)(3). A judgment to that effect will be entered this date.

The foregoing constitutes the Court's statement of facts and conclusion of law as required by Fed. R. Bankr. P. 7054.

Dated and signed above.

---

provided to Plaintiffs or the computer made available to confirm Debtors' assertion that the QuickBook Records contain no information about payables.

| 1 | Notice to be sent through |
| --- | --- |
| 2 | the Bankruptcy Noticing Center to the following: |
| 3 | |
| 4 | Dennis J. Clancy Raven Clancy & McDonagh PC |
| 5 | 182 North Court Avenue Tucson, AZ 85701 |
| 6 | Attorney for Plaintiffs |
| 7 | Eric Slocum Sparks |
| 8 | Eric Slocum Sparks PC 110 South Church Ave. #2270 |
| 9 | Tucson, AZ 85701 Attorney for Debtors/Defendants |